UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  3/31/2022
```

BENJAMIN SAMUEL RICH, *formerly known as Samuel Guillaume*,

                              Plaintiff,

        -against-

STATE OF NEW YORK, NEW YORK CITY;
NEW YORK CITY POLICE DEPARTMENT;
NEW YORK COUNTY; NEW YORK
COUNTY DISTRICT ATTORNEY'S
OFFICE; DETECTIVE MICHAEL MILLER,
VINCENT CORRANDO, JOHN
PASSEMENTI, CYRUS VANCE, JR.,
SHIPLA KALRA, DAVID NASAR, and
DOES 1–100, Inclusive.,

                              Defendants.

21 Civ. 3835 (AT)

**ORDER**

ANALISA TORRES, District Judge:

        This action arises from a 2016 arrest and prosecution of Plaintiff *pro se*, Benjamin

Samuel Rich, in New York County.  He brings claims against the State of New York (the

"State"); former New York County District Attorney ("DA") Cyrus R. Vance, Jr. and two

Assistant District Attorneys ("ADAs"), Shilpa Kalra and David Nasar, (collectively, the

"DA Defendants"); and the City of New York (the "City"), the New York City Police

Department (the "NYPD"), and NYPD officers Michael Miller, Vincent Corrando, and John

Passementi (collectively, the "City Defendants"), pursuant to, *inter alia*, 42 U.S.C. §§ 1983,

1985, and 1986, the New York State Constitution, and New York common law.  *See generally*

Compl., ECF No. 1.  Before the Court are three motions to dismiss Plaintiff's complaint pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, brought by the State,

ECF No. 20, the DA Defendants, ECF No. 22, and the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to dismiss is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

## BACKGROUND[1]

On January 6, 2016, Plaintiff was at the Highline Ballroom ("the Highline"), a nightclub in Manhattan, as an invited guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24. Quahtan and the club owner began arguing over "Quahtan['s] [having brought] Plaintiff to the party." *Id.* ¶ 25. Security staff, and an individual named Avery Jackson, asked Plaintiff to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly escorted" from the club, and that Jackson became "belligerent and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and jumped into a black sedan . . . at the time the shots were fired." *Id.* ¶ 37. He also states that there were "numerous witnesses" to the shooting, including a "female 911 caller," who lived "next door" to the Highline. *Id.* ¶ 36. In that 911 call, the witness said that she had seen a "man jump into a black sedan speeding down the street" after shots were fired. *Id.* Based on this call, Plaintiff believes "it was more likely

---

[1] Unless otherwise stated, the following facts are taken from the complaint and assumed, for purposes of this motion, to be true. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

that it was [] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff

down." *Id.* ¶ 37.

The shooting was investigated by Detective Michael Miller, who interviewed Jackson.

*Id.* ¶¶ 29–30.  Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in

the direction of the Highline," and that Jackson "ran back into the club" when shots were fired.

*Id.* ¶¶ 30, 37.  But, Plaintiff alleges that many of Jackson's representations to Miller contradicted

his initial statements to the NYPD officers who first responded to the shooting, as well as other

eyewitness accounts.  *See, e.g.*, ¶¶ 30–32.  For instance, Plaintiff alleges that Jackson told the

responding officers that Plaintiff was "escorted from the club because he was intoxicated," and

that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm . . . and fired several

shots." *Id.* ¶¶ 31, 46.  But, Jackson told Miller that Plaintiff was "forcibly ejected from the club"

after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a

gun. *Id.* ¶ 32.  Plaintiff also contends that Jackson's statements were demonstrably false,

because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that

Plaintiff was "calm, peaceful, and cooperative" when escorted from the club.  *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the

shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37,

39.  Plaintiff also suggests that Miller obtained—but disregarded—surveillance video from the

inside and the outside of the club that would have corroborated Plaintiff's version of events.  *See*

*id.* ¶¶ 40–43.  Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor,

"approved all [of the] reports written" in the investigation and "should have notice[d] or known

of all the inconsistencies and contradictory statements" in Miller's reports.  *Id.* ¶ 95.  And,

Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3.[2]

---

[2] The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.*, 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel.  Compl. ¶ 64.  Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles."  *Id.*  He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier.  Compl. ¶ 64.  The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination.  Trial Tr. at 3.  On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club.  *Id.* at 47–48.

On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing.  *Id.* at 135.  Nasar acknowledged that if Jackson was indeed visible in the videos, he was  "doing a bunch of things contrary to what he testified about."  *Id.*; *see also id.* at 136.  The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters.  *See id.* at 146–50, 152–54.  Jackson was brought in, and warned about perjury.  *See id.* at 154–56.  Jackson identified himself on the videos wearing a jacket and a light-colored shirt.  *See id.* at 156–59.  The court then adjourned the proceedings.  *See id.* at 159.  When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct.  Compl. ¶ 100.  On October 17, 2017, Kalra consented to dismissal of the indictment on the first

ground, but opposed the assertion of prosecutorial misconduct.  Dismissal Tr. at 12–13, 15–16.

The court dismissed the indictment, but the presiding judge stated he did not "see any

prosecutorial misconduct."  *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff

commenced this action.  Compl.  Defendants move separately to dismiss the claims against them.

ECF Nos. 20, 22, 32.  The Court considers each motion in turn.

## DISCUSSION

I.    <u>Legal Standard</u>

A.  Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the

court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to

adjudicate it.  *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010

WL 2507041, at *1 (S.D.N.Y. June 21, 2010).  "A plaintiff asserting subject matter jurisdiction

has the burden of proving by a preponderance of the evidence that it exists."  *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court must consider a challenge to

subject matter jurisdiction before addressing other grounds for dismissal.  *Rhulen Agency, Inc. v.*

*Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true.

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).  It may not, however,

"draw inferences . . . favorable to [the] plaintiff[]" on such a motion.  *Id.*  And, the Court may

consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction.

*See id.*

B.  Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions."  *Twombly*, 550 U.S. at 555.  The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *ATSI Commc'ns, Inc*, 493 F.3d at 98.  On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[] [them] to raise the strongest arguments they suggest."  *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).  And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint.  *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

II.  <u>Duplicative and Improper Claims</u>

Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law.  Compl. ¶¶ 148–51.  But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it.  *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016).  Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint—fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer."  *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000).  Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims.  Compl. ¶¶ 133–47.  The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983."  *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016).  But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims.  *Id.*  Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative.  Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III.   The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity.  State Mem. at 3, ECF No. 21.  The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states.  U.S. CONST. AMEND. XI.  This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas*

*Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987).  There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense.  *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  Here, the State has not explicitly waived its immunity, or consented to be sued.  *See* State Mem. at 3.  And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity.  *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute.  *Kimel*, 528 U.S. at 80.  But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015).  In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment.  *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief."  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908).  But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief.  Compl. § IX.  And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing

solely with past violations," *Medina*, 2015 WL 13744627, at *7.  Although Plaintiff demands

"affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see*

Compl. § IX(B), he does not allege any present violations of his rights, *see id.  See Medina*, 2015

WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also

barred under the Eleventh Amendment").  Accordingly, this exception does not preclude the

State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived

of subject-matter jurisdiction under Rule 12(b)(1).  *McGinty v. New York*, 251 F.3d 84, 89, 101

(2d Cir. 2001).  Accordingly, because the State is immune from liability on all of Plaintiff's

claims under the Eleventh Amendment, its motion to dismiss is GRANTED.  And, because

amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice

to renewal.[3]

IV.   The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising

*inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions.  *See*

---

[3] Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes.  State Mem. at 3–4.

[4] Plaintiff makes this clarification for the first time in his opposition papers.  ECF No. 28 at 14.  The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves*, 436 U.S. 658, 690 n.55 (1978)).  And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017).  Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment.  *See id.*

[5] Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers).  Compl. ¶¶ 117–27, 168–81.  As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent infliction of emotional distress) against the DA Defendants.

*generally Compl.*  First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting.  Compl. ¶ 81.  Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78.  Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him.  *Id.* ¶¶ 50–51.

### A.  Absolute Immunity

The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity.  DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

### 1.  Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law.  *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976).  Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims.  *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004).  Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process."  *Imbler*, 424 U.S. at 430.  But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly

established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted).  And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[] erroneous the act . . . and how[] injurious . . . its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime.  Compl. ¶ 81.  But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him.[6]

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78.  But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant."  *Newson v.*

---

[6] Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

*City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019).  This is true

even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d

578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional

rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009).  Accordingly, Kalra and

Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation

under this factual allegation.

Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false

testimony to the grand jury, which then formed the basis for his indictment.  Compl. ¶¶ 50–51.

Prosecutors generally only have qualified immunity for actions taken before there is probable

cause to arrest a defendant, because they are performing an investigative function, rather than

acting as advocates.  *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273.  And, although

"knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as

an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a

prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to

absolute immunity—from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–

63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause

for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence

was manufactured, the prosecutor intended to present it to the grand jury).  In *Hill*, the Second

Circuit also established that "when it may not be gleaned from the complaint whether the

conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the

availability of qualified immunity from claims based on such conduct cannot be decided as a

matter of law on a motion to dismiss."  *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment.  Compl. ¶¶ 50–51.  Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false.  *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury").  And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct.  *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question).  And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury.  *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights).  Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2.  State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint.  Compl. ¶¶ 164–67, 182–85.  As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to

absolute immunity. *Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation.[7]

### B. Time Bar

The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

#### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions, N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill,* 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute

---

[7] As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

of limitations, *see* 42 U.S.C. § 1986.  Federal courts are also obligated to apply New York's

tolling rules.  *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which

tolled the statute of limitations in New York in light of the COVID-19 pandemic.  9 N.Y.C.R.R.

§ 8.202.8.  Subsequent orders extended the tolling period until November 3, 2020.  Exec. Order

202.67 (Oct. 4, 2020).  Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8,

other courts in this district have uniformly concluded that Executive Order 202.8 applies to

federal cases applying New York's statute of limitations, including for § 1983 claims.  *See, e.g.*,

*Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at *2 n.3 (S.D.N.Y. Sept. 2,

2021).[8]  The Court concludes, therefore, that Executive Order 202.8 tolls the statute of

limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year

limitations period—but not Plaintiff's § 1986 claims, because the applicable statute of limitations

for that claim is found in the federal statute itself.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue

when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at

the time of arrest.  *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at *4

(S.D.N.Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016).  The

dismissal of an indictment constitutes the termination of a proceeding.  *Sharp*, 2019 WL

2250412, at *4–5.  Applying these principles, Plaintiff's § 1983 claims for malicious prosecution

---

[8] The DA Defendants' reliance on *Johnson v. Fargione* is unavailing.  In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay.  20 Civ. 764, 2021 WL 1406683, at *3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021).  Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

(Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him.  Dismissal Tr. at 5.  And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021.[9]  Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018).  Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable.  Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs.  It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted).  As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and

---

[9] Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020.  The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021).  Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

arrest.  Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely.  Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury.  *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013).  Plaintiff knew of the injury by his arrest date.  Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely.[10]  Accordingly, Count 6 is DISMISSED with prejudice.

### 2.  State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred.  "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident."  *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, *2 (S.D.N.Y. May 3, 1996).  Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment.  Compl. ¶ 16.  Plaintiff did not commence this action until March 12, 2021.  *See* Compl.  Therefore,

---

[10] Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations.  Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims.  *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).  The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

C.  Personal Involvement

Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations.  *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11.  Vance may not be held liable for merely employing or supervising Kalra and Nasar.  *See Iqbal*, 556 U.S. at 676.  And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding.  Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile.  *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony.  Compl. ¶ 50.  But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify.  By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury.  No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings.  In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue.  Failure to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

V.      City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline

Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96.  The Court addresses each remaining[11] cause of action.

A.  Time Bar

1.  Section 1983 Claims

Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8).  As noted, § 1983 claims are subject to a three-year statute of limitations in this district.  *See supra* at 15.  And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded.  *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred.  *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014).  Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016.  Compl. ¶¶ 46–47.  The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly two years before Plaintiff brought suit.  Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

---

[11] As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest.  *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at \*4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at \*3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process).  Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019.  Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2.  Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97.  This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect.  *Id.* ¶¶ 36–37, 39, 46, 90.  Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrando's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports.  *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at \*5.  Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986.  Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date.  The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years,

respectively, before the complaint was filed.  Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3.   State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e.  As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates.  Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice.[12]

### B.   Claim Against the City[13]

The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers.  *See* Compl. ¶ 179.  The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim.  City Defs. Mem. at 20–22, ECF No. 34.  The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir.

---

[12] As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute.  This provides an alternative ground for dismissal.

[13] Plaintiff also names the NYPD as a defendant.  *See* Compl.  But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law.  *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).  Any such claims are, accordingly, DISMISSED with prejudice.

1985).  Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27.  These allegations cannot, without more, state a claim for municipal liability.  *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020).  Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, any such claim is DISMISSED with prejudice.  *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

C.  Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial).  As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff."  Compl. ¶ 96.  Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983.  *Tangreti*, 983 F.3d at 618.  And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

### D.  Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits.  *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989).  The City Defendants argue that Plaintiff has not made such a showing.  City Defs. Mem. at 10, 14–17.  The Court agrees.  Plaintiff asserts—citing no authority in support—that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations."  ECF No. 39 at 7, 10 (quotation marks omitted).  It is not clear what Plaintiff means by this.  And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence.  *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons . . . stated on the record for dismissing the charges" in determining whether the termination of the criminal case was in plaintiff's favor).  Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter."  Dismissal Tr. at 15.  The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct."  *Id.* at 16.  The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim.  There is no information before the Court as to whether, for

example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff.  Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

E.   Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted).  The plaintiff need not show a favorable termination indicative of innocence to state such a claim.  *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021).  The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence.  City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim.  *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation omitted)).  Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and

approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95.  On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12.  It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003).  The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando.  The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED.  The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint.  By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order.  The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects.  Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order.  The Clerk of Court is directed to

terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to

Plaintiff *pro se*.  The Court shall separately provide Plaintiff with a copy of all unpublished cases

cited herein.

       SO ORDERED.

Dated: March 31, 2022
      New York, New York

                                           _____
                                               ANALISA TORRES
                                    United States District Judge