UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN SAMUEL RICH fka
SAMUEL GUILLAUME,

                                        Plaintiff,

                  -against-

DETECTIVE MICHAEL MILLER,
DETECTIVE VINCENT CORRANDO,

                                        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/14/2025____

21 Civ. 3835 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff *pro se*, Benjamin Samuel Rich, formerly known as Samuel Guillaume, brings this action against Defendants, Detective Michael Miller and Sergeant Vincent Corrado[1] of the New York City Police Department ("NYPD"), claiming malicious prosecution and denial of a fair trial. *See generally* Am. Compl., ECF No. 55. For the reasons stated below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND[2]

I.     <u>Factual Background</u>

In the early hours of January 6, 2016, NYPD officers responded to a shooting at the Highline Ballroom, a Manhattan nightclub. Def. 56.1 ¶ 1, ECF No. 161; *see* Pl. Resp. at 1, ECF No. 168; Def. Ex. A.[3] Two officers met with Avery Jackson, a bouncer at the club, who told them that the perpetrator, a man who had been asked to leave the club, shot at Jackson. Def. 56.1

---

[1] Although the case caption spells Sergeant Corrado's name "Corrando," Corrado's motion for summary judgment and filings in support of his motion use the spelling "Corrado." *See* Mot., ECF No. 159.

[2] These facts are taken from Defendants' Rule 56.1 statement, ECF No. 161, Plaintiff's responses, ECF No. 167 at 1–7; ECF No. 168 at 1–4, and the parties' declarations and accompanying exhibits, ECF No. 160; ECF No. 166 at 6–11; ECF No. 167 at 8–30; ECF No. 168 at 5–36, unless otherwise noted. Citations to a paragraph of Defendants' Rule 56.1 statement also include Plaintiff's response.

[3] Citations to "Def. Ex." are to the exhibits attached to Mamoon Saleemi's declaration at ECF No. 160.

¶ 2.  Soon after, Detective Miller reported to the scene and interviewed Jackson, who told him that he had been working a holiday party and saw the shooter arguing with people.  *Id.* ¶¶ 4–5; Def. Ex. C.  Jackson reportedly tried to intervene, and the shooter allegedly said, "I'll throw shots your way."  Def. 56.1 ¶ 5; Def. Ex. C.  Jackson told Miller that the shooter then got into a white Rolls Royce, double parked the car, pulled a handgun from his trunk, and fired five to seven shots toward Jackson.  Def. 56.1 ¶ 5; Def. Ex. C.

That same day, Miller interviewed Malini Periana and Wasief Qahatan, both of whom attended the party.  Def. 56.1 ¶¶ 7–9.  Malini told Miller that she and Qahatan had been enjoying the party when Qahatan's "boyfriend," "Ben," got into an argument and was thrown out of the club.  *Id.* ¶ 7; Def. Ex. E.  Qahatan confirmed that her "friend," Benjamin Rich, met her at the party and was made to leave after getting in an argument with someone there.  Def. 56.1 ¶ 9; Def. Ex. G.  Qahatan also told Miller that Rich drove a white Rolls Royce.  Def. 56.1 ¶ 9; Def. Ex. G.  After learning Rich's name, Miller located a Department of Motor Vehicles record with Rich's photograph, and that evening, he followed up with Qahatan, who confirmed Rich's identity.  Def. 56.1 ¶¶ 10–12; Def. Ex. H.  Miller learned that Rich also went by the name Samuel Guillaume and issued an investigation card stating that Rich was wanted for reckless endangerment.  Def. 56.1 ¶¶ 13–14.

The following day, January 7, 2016, Miller interviewed Radheka Periana, Malini Periana's sister, who had invited Qahatan to the Highline Ballroom party.  *Id.* ¶ 15; Def. Ex. K. Radheka explained that she left the club before Rich arrived, and when she called Qahatan to discuss what happened, Rich picked up instead.  Def. 56.1 ¶ 16; Def. Ex. K.  In their phone conversation, which Radheka recorded and later sent to Miller, Rich said that he had been "disrespected" and emphasized multiple times that "nobody disrespects him."  Def. 56.1 ¶¶ 16–

17; Def. Ex. K; Def. Ex. L at 00:30–37, 1:20–22, 2:06–08. Rich also told Radheka that he "gave [the men at the club] what they asked for" and asked, "Did anyone get hurt?" Def. Ex. L at 00:30–37, 00:45–46. Another detective ran a search for Rich's company, Superior Vision Films, and confirmed that a Rolls Royce was registered to the business. Def. 56.1 ¶ 18; Def. Ex. M. Two days later, on January 9, Miller conducted a photo array with Jackson, the shooting victim. Def. 56.1 ¶ 19; Def. Ex. N. Miller showed Jackson six pictures, and Jackson identified Rich as the person from the "incident at the Highline Ballroom." Def. 56.1 ¶¶ 19–23; Def. Ex. N.

Rich was arrested in New Jersey on January 21 and was indicted in New York the following day on charges of attempted murder, attempted assault, and criminal possession of a weapon. Def. 56.1 ¶¶ 24–25; Def. Exs. O–P. Miller and another detective transported Rich from New Jersey to New York, where Jackson again identified him, this time at an in-person lineup. Def. 56.1 ¶¶ 26–29; Def. Exs. Q–S. Throughout this time, NYPD Sergeant Vincent Corrado signed off on Miller's investigation reports as his reviewing supervisor. *See* Def. Exs. A, C–E, G–I, K, M–S.

In June 2017, Rich appeared in Supreme Court, New York County, for a *Wade/Dunaway* hearing to determine whether the photo array and in-person lineup were fair and whether probable cause existed to arrest him. Def. 56.1 ¶ 30; Def. Ex. F. After the State of New York (the "State") summarized the investigation and called Miller to testify, the Honorable Ruth Pickholz held that the identification procedures were fair and that the NYPD had probable cause to arrest Rich. Def. 56.1 ¶¶ 30–32; *see generally* Def. Ex. F. During trial, which began the following week, the Court learned that the victim and only witness to the alleged crime, Jackson, made inconsistent statements to the police, grand jury, and Court. Def. 56.1 ¶ 33; *see* Def. Ex. T at 162:3–6. At Rich's request, the Court declared a mistrial, Def. 56.1 ¶ 35; Def. Ex. T at

188:10–12, and the Government subsequently dismissed the indictment, ECF No. 33-3 at 16:19–20.

II.    Procedural History

On March 12, 2021, Rich filed this action against the State, the New York County District Attorney's Office, former New York County District Attorney Cyrus Vance, Jr., and two assistant district attorneys (collectively, the "DA Defendants"), the City of New York (the "City"), the NYPD, and NYPD officers Miller, Corrado, and John Passementi, alleging claims under 42 U.S.C. §§ 1983, 1985 and 1986, 18 U.S.C. § 242, the New York Constitution, and New York common law. *See generally* ECF No. 1. The defendants moved to dismiss, ECF Nos. 20, 22, 32, and by order dated March 31, 2022, the Court dismissed Rich's claims against the State, the DA Defendants, the City, the NYPD, and Passementi. *See generally Rich v. New York*, No. 21 Civ. 3835, 2022 WL 992885 (S.D.N.Y. Mar. 31, 2022). With regard to Miller and Corrado, the Court dismissed all claims against them except Rich's claims for malicious prosecution and denial of a fair trial under § 1983. *Id.* at *12–13.

In May 2022, Rich amended his complaint, narrowing his causes of action to three § 1983 claims for malicious prosecution, denial of a fair trial, and fabrication of evidence. Am. Compl. ¶¶ 96–123. The DA Defendants again moved to dismiss, ECF No. 63, but before their motion was resolved, Rich voluntarily dismissed his claims against them, ECF Nos. 76–79. In July 2023, the remaining Defendants, Miller and Corrado, moved for summary judgment, asserting that Rich's claims are barred by a general release that he and the City entered into in an unrelated matter. ECF Nos. 121, 124. The Honorable Gabriel W. Gorenstein, finding that there exists a dispute of fact as to whether Rich signed the relevant settlement agreement, issued a report recommending that Defendants' motion be denied, *Rich v. New York*, No. 21 Civ. 3835,

2023 WL 8397523 (S.D.N.Y. Dec. 5, 2023), and receiving no objections, the Court adopted the

report in its entirety, *Rich v. New York*, No. 21 Civ. 3835, 2023 WL 8879278 (S.D.N.Y. Dec. 22,

2023).  Before the Court is Defendants' most recent motion for summary judgment.  Mot., ECF

No. 159; *see* Mem., ECF No. 163; Opp., ECF No. 166; Reply, ECF No. 172.[4]

## LEGAL STANDARD

A party is entitled to summary judgment if it can establish that there "is no genuine

dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of informing the Court of the absence of a

genuine dispute of material fact by citing particular evidence in the record.  Fed. R. Civ. P.

56(c)(1); *Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir.

2002).  In making this showing, the party may rely on "materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

56(c)(1)(A).  If the moving party meets its initial burden, the burden shifts to the opposing party

to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006).  The

Court views all facts "in the light most favorable to the non-movant, resolving all ambiguities in

her favor."  *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

---

[4] Rich has filed two unauthorized sur-replies.  *See* ECF Nos. 172–73.  The Court exercises its discretion to consider the arguments contained therein.

Because Rich is proceeding *pro se*, the Court construes his submissions "liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

## DISCUSSION

Defendants seek summary judgment on Rich's § 1983 claims for malicious prosecution and denial of a fair trial.[5]  Mem. at 1.

## I.    Malicious Prosecution

To succeed on a claim for malicious prosecution under § 1983, a plaintiff must demonstrate "(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) 'that there was no probable cause for the proceeding'; and (iv) 'that the proceeding was instituted with malice.'"[6]  *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  The plaintiff must also show a "seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment."  *Id.* (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)); *see Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) (explaining that, under § 1983, a plaintiff must establish "a post-arraignment deprivation of liberty that rises to the level of a

---

[5] Because the Court finds that Rich's third claim, for fabrication of evidence, is duplicative of his second claim, for denial of a fair trial, the Court addresses them together.  *See* Am. Compl. ¶¶ 105–23; *Rich*, 2022 WL 992885, at *4.

[6] In its order addressing Defendants' motion to dismiss, the Court, citing *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018), held that the dismissal of the indictment against Rich was not a "termination in his favor" because it left open the question of his guilt or innocence.  *Rich*, 2022 WL 992885, at *12.  However, in *Thompson v. Clark*, the Supreme Court abrogated *Lanning* to hold that a malicious prosecution claim under § 1983 "does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence."  596 U.S. 36, 49 (2022).  Rather, *Thompson* established that a plaintiff "need only show that the criminal prosecution ended without a conviction."  *Id.*  The dismissal of Rich's indictment was, therefore, a termination in his favor.

constitutional violation").  When a claim of malicious prosecution is made against a police

officer, a plaintiff must "overcome the presumption that a prosecutor exercises independent

judgment in deciding whether to initiate a criminal proceeding" by showing that the officer

"either (1) created false information and forwarded it to the prosecutors or (2) withheld relevant

and material information."  *Bailey*, 79 F. Supp. 3d at 449 (quoting *Breeden v. City of New York*,

No. 09 Civ. 4995, 2014 WL 173249, at *10 (E.D.N.Y. Jan. 13, 2014)).

A police officer possesses probable cause to arrest someone when he "ha[s] knowledge

of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to

warrant a person of reasonable caution in the belief that an offense has been or is being

committed by the person to be arrested."  *Manganiello v. City of New York*, 612 F.3d 149, 161

(2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).  Ultimately, a

court must determine whether probable cause exists "by reference to the totality of the

circumstances."  *Id.*  The issue can be determined as a matter of law "if there is no dispute as to

the pertinent events and the knowledge of the officers."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d

Cir. 1996).

Summary judgment is warranted because Rich fails to establish a genuine factual dispute

concerning the existence of probable cause to arrest and prosecute him.[7]  Defendants have

adduced evidence that Jackson, the claimed eyewitness to the shooting, described the shooter as

driving a white car.  Def. Exs. C–D.  Jackson then identified Rich as the shooter on two separate

occasions, first in a photo array, and then in an in-person line-up.  Def. Exs. N, S.  These facts

---

[7] Rich's claims against Corrado, the supervising officer who signed off on many of Miller's investigations reports,
fail for the separate reason that Rich has not put forward any facts suggesting that Corrado was personally involved
in Rich's investigation or prosecution.  *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (explaining that
"personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages
under § 1983" (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).

alone would likely establish the existence of probable cause.  *See Garcia v. Gridley*, No. 16 Civ. 6180, 2020 WL 2523049, at *5 (E.D.N.Y. May 18, 2020) ("An eyewitness account identifying the suspect as the perpetrator is generally sufficient to establish probable cause.").  So would the grand jury's indictment of Rich.  *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) ("[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983))).  Moreover, Miller interviewed multiple people who attended the Highline Ballroom party, each of whom confirmed that Rich got into an argument with someone at the party and was told to leave.  Def. Exs. E, G.  Defendants also point to a phone call between Rich and Radheka that supports Jackson's account, Def. Exs. K–L, and the transcript from the *Wade*/*Dunaway* hearing in which Judge Pickholz held that Miller had probable cause to arrest Rich, Def. Ex. F at 36:3–6.

Rich argues that summary judgment should be denied, first, because one of the people who called 911 after the shooting reported seeing the shooter drive away in a black sedan as opposed to the white Rolls Royce, and second, because Jackson, the key eyewitness whose statements helped establish probable cause, was found to have made inconsistent statements under oath.  Opp. at 3; ECF No. 167 at 2.  As to the first point, Rich does submit a police report showing that a 911 caller reported hearing gunshots and then seeing a car with a black top speed away from the area.  ECF No. 168 at 27.  However, the police report also states that the witness "had no further information to provide," *id.*, and regardless, the mere existence of arguably

inconsistent evidence does not defeat a finding of probable cause,[8] *see Radin v. City of New York*, No. 14 Civ. 7347, 2016 WL 3982463, at *3 (E.D.N.Y. July 22, 2016) (explaining that "courts have consistently held that conflicting evidence does not negate probable cause" and collecting cases).

As to Rich's second point, he is right that probable cause was established in large part based on Jackson's account of what happened. Nevertheless, Rich adduces no evidence suggesting that Miller should have known that Jackson was lying to him, that Jackson did in fact lie about Rich's conduct, or that Miller otherwise acted unreasonably or in bad faith, and the law makes clear that Miller cannot be held liable for a private citizen's misdeeds. *See Manganiello*, 612 F.3d at 161 (explaining that probable cause may exist "where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it"); *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (describing the inquiry as whether a police officer "knowingly made false statements"); *see also* ECF No. 33-3 (state court transcript suggesting that, although Jackson was not truthful about exactly what happened on the night of the shooting, he did not deny that Rich did in fact shoot at him).

Because the record demonstrates that there existed probable cause to arrest and prosecute Rich, Defendants are entitled to summary judgment on Rich's claim for malicious prosecution. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 342 (S.D.N.Y. 2009) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution.").

---

[8] Rich faults Defendants for failing to produce a transcript of the witness's 911 call. Opp. at 3. However, Rich did not raise this issue before the close of discovery, and Judge Gorenstein justifiably denied Rich's belated motion to compel. *See* ECF No. 171.

II.    Denial of a Fair Trial

To make out a claim for denial of the constitutional right to a fair trial, a plaintiff must establish that "an (1) investigating official (2) fabricate[d] information (3) that [was] likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)).

As described above, Rich puts forth no evidence that Defendants, as opposed to Jackson, fabricated evidence.  Accordingly, summary judgment shall also be granted on Rich's claim that he was denied a fair trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to (1) terminate the motion at ECF No. 159, (2) enter judgment in favor of Defendants, (3) mail a copy of this order to Plaintiff *pro se*, and (4) close the case.

SO ORDERED.

Dated: May 14, 2025
       New York, New York

_____
ANALISA TORRES
United States District Judge